**David MONTEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–90–00583–CR.**

Court of Appeals of Texas,
San Antonio.

Jan. 31, 1992.

———

Mark Stevens, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Martina Barrera, Jim Kopp, Daniel Thornberry, Asst. Crim. Dist. Attys., San Antonio, for appellee.

Before CHAPA, BIERY and CARR, JJ.

OPINION

BIERY, Justice.

David Montez, appellant, was convicted by a jury of the offense of aggravated possession of cocaine; the trial judge assessed punishment at twenty-five years' imprisonment and a $10,000 fine. Appellant appeals, alleging that he was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, § 10 of the Texas Constitution. We sustain the points of error and reverse and remand for a new trial.

The standard of review for this type of case was enunciated by the Supreme Court of the United States in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* imposed a two-prong test for the evaluation of ineffective assistance claims. First, the appellant must show that his counsel rendered ineffective assistance in that counsel made unprofessional errors such that counsel was not functioning effectively on the client's behalf. Secondly, appellant must show that he was prejudiced by his counsel's substandard performance. Prejudice must rise to the level sufficient to undermine the confidence in the outcome of appellant's trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. The *Strickland* standard has been adopted by the Court of Criminal Appeals in resolving allegations of ineffective assistance under Article 1, § 10 of the Texas Constitution. *See Holland v. State,* 761 S.W.2d 307, 314 (Tex. Crim.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). In a more recent case, the Texas Court of Criminal Appeals also stated that "[a]lthough, no one instance in the present case standing alone is sufficient proof of ineffective assistance of counsel, counsel's performance taken as a whole does compel" the holding that confidence in the outcome of the trial was undermined, resulting in a new trial. *Ex parte Welborn,* 785 S.W.2d 391, 396 (Tex. Crim.App.1990). We find that the quality of trial representation of Mr. Montez is

unfortunately quite similar to that received by Mr. Welborn.

While the State does not affirmatively concede that appellant's trial counsel committed such professional errors that he was not functioning effectively on appellant's behalf, the State offers little challenge to the litany of professional errors presented by Mr. Montez's appellate counsel. Rather, the State specifically relies on the second or "prejudice" prong of *Strickland*. The State contends that, not withstanding the alleged professional errors of trial counsel, the admissible inculpatory evidence against appellant precludes him from meeting his burden on the second prong of *Strickland.*

The factual record reveals that a search warrant was executed at appellant's home, and appellant was found alone in the residence. Officers searched the house and discovered on the shelves of a closet in the bathroom, several ziploc bags containing a white powdery substance; other bags containing a substance that field tested positive for methamphetamine and baggies containing marijuana were also discovered. A ziploc bag containing methamphetamine was recovered from on top of a dresser in the bedroom. Subsequent chemical analysis revealed that three pounds of marijuana, five ounces of methamphetamine, and five ounces of cocaine had been recovered by the police. In addition to the narcotics, the police also recovered several items of drug paraphernalia. An electronic scale was plugged in on top of the counter inside of the bathroom in which most of the drugs were found. Additionally, a grinder or sifter was seized. Small ziploc bags, similar to the ones in which some of the narcotics were recovered in and commonly used to package drugs for street sale, were found at the scene. In addition to the narcotics and paraphernalia, $90,000 in cash was recovered from the house, and about $1,500 in cash was discovered in a vinyl bag in a hallway closet.

Appellant's defensive theory, to which he testified, was that he was aware of the narcotics in his house, but that he was an innocent possessor. According to appellant, he was in the process of selling real property to an individual, Tony Hurtado, in return for some cars and cash. Appellant testified that he was shocked when one of his employees, Roy Ybarra, discovered the drugs in one of the automobiles used by Hurtado as consideration for the real estate transaction. Appellant called Rudy Vaquera, a friend who was related to several police officers, for help in handling the discovered drugs. Vaquera went to the Cresthill address, was shown the drugs, and then assisted the appellant in placing the drugs in the bathroom for safekeeping. The appellant claimed that Vaquera assured him he would find out what he could do to help appellant. The next day the police executed the search warrant.

Roy Ybarra testified that he was an employee of appellant and that he discovered drugs in one of the cars. The State, on rebuttal, called Rudy Vaquera who testified that he never had the conversation described by appellant and never went to the appellant's house on the date in question. Vaquera's father-in-law, Charles Dickinson, a sergeant with the San Antonio Police Department, denied that Vaquera ever told him that appellant had asked Vaquera to report to the police that drugs had been found in a car purchased by appellant. The jury obviously resolved the conflicting testimony in favor of the State and against the appellant by its verdict of guilty.

While we agree with the State that it had a very strong case against the appellant, which may very well result in another conviction upon retrial, we also recognize that prior to trial and representation by trial counsel, appellant at least had an arguable defense: that he was an honest businessman who purchased a car which, unknown to him, contained hidden cocaine. We are persuaded that the magnitude and quantity of professional errors of appellant's trial counsel so undermines our confidence in the conviction that the result *might* have been different (a hung jury or an acquittal) but for the totality of the circumstances of the errors committed. *Vasquez v. State,* No. 1095–90, 1992 WL 4042 (Tex.Crim.App. Jan. 15, 1992); *Ex parte Welborn,* 785 S.W.2d at 396.

Particularly troublesome to us are the professional errors committed during the selection of the jury, perhaps the most important phase of the trial. The record reflects that prospective juror Batschelet admitted knowing the State's chemist, Jeffrey Todd. Despite this admission, counsel never inquired about the relationship between the witness and the venire person; Mr. Batschelet later served on the jury. It is normally expected that counsel for the accused would determine if any prospective juror either knew or was related to the prosecutor or any of the State's witnesses. *Miles v. State*, 644 S.W.2d 23, 24 (Tex. App.—El Paso 1982, no pet.); *see also Ex parte Welborn*, 785 S.W.2d 391, 392–94 (Tex.Crim.App.1990) (failure to voir dire on the law of parties); *San Roman v. State*, 681 S.W.2d 872, 874 (Tex.App.—El Paso 1984, pet. ref'd) (no voir dire questions about venire persons' connections with law enforcement).

Prospective juror Blackwell admitted to a "tendency to be unfair and a little biased" because of her knowledge and experience of the danger of drugs. Ms. Blackwell was properly challenged by trial counsel. Although the challenge was denied, trial counsel did not preserve possible error as specified in *Jacobs v. State*, 787 S.W.2d 397, 405 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990). In *Roberson v. State*, 798 S.W.2d 602, 605 (Tex.App.—Austin 1990), *remanded for review of sufficiency points*, 810 S.W.2d 224 (Tex.Crim.App.1991), the court of appeals reversed appellant's conviction based on the overall deficient performance of trial counsel. One of the factors taken into account was counsel's failure to preserve error after the trial court denied a challenge for cause. *Id.* at 605.

The trial court, in the case before us, abbreviated the voir dire examination after appellant's trial counsel had individually examined only twenty-two members of the jury panel. Prospective juror Stamm, Houston, Short, Gallegos, and Ruiz were seated on the jury, even though they were not examined individually by appellant's trial counsel. Although Texas appellate courts have been sensitive to complaints from defendants that the trial court imposed an unreasonable time restriction at voir dire, a proper routine must be observed to preserve error. The record must show that counsel sought and was forbidden from asking proper questions. *See Ratliff v. State*, 690 S.W.2d 597, 600 (Tex. Crim.App.1985). Even if there was trial court error, it was not preserved because counsel made no attempt to demonstrate that he would have asked certain proper questions of those left unexamined. Because of trial counsel's professional errors in not questioning the prospective jurors and in not obtaining additional peremptory challenges, it is virtually impossible for this Court to know whether these members of the jury panel should have been challenged and whether, if they had been challenged successfully, different jurors may have found a reasonable doubt as to appellant's guilt.

In addition to the fundamental fairness issue of properly selecting a jury, Mr. Montez's appellate counsel effectively argues numerous other severe deficiencies in trial counsel's performance:

1. Although the State did not try to inject extraneous offenses, Mr. Montez's own lawyer actually and affirmatively elicited, on cross-examination of the State's witnesses, numerous highly prejudicial extraneous acts which otherwise would have been inadmissible.

2. Trial counsel made no effort at all to exclude oral statements made by the appellant. Instead trial counsel, as with the inadmissible extraneous offense evidence, actually and affirmatively elicited a number of highly damaging statements attributable to appellant, even though they were otherwise inadmissible under Texas law.

3. Trial counsel actually and affirmatively elicited a number of inadmissible hearsay statements which incriminated appellant.

4. By his own admission on the day of trial, counsel was not prepared. He did virtually no discovery and, as a result of his unpreparedness, counsel

was surprised by damaging evidence at the trial.

5. During his opening statement, trial counsel placed the burden on his own client by stating "to a certain extent" we will need to prove Mr. Montez's innocence and further, made extravagant promises about what would be shown to the jury, such promises never being fulfilled.

For the reasons stated, we are persuaded that appellant did not receive a fair trial based upon the ineffective assistance and the professional errors of his trial counsel. Based on the totality of the circumstances, our confidence in the outcome is sufficiently undermined to require a remand for new trial.